**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

**UNITED STATES OF AMERICA** **CASE NO. 2:25-CR-00356-01**

**VERSUS** **JUDGE JAMES D. CAIN, JR.**

**TONI JANUARY (01)** **MAGISTRATE JUDGE LEBLANC**

## MEMORANDUM ORDER

Before the Court is a Motion to Dismiss Indictment (Doc. 34) filed by Defendant, Toni January, through counsel. In his Motion, Defendant maintains that Count 1 (Possession of Firearm and Ammunition by a Convicted Felon [18 U.S.C. § 922(g)(1)]) must be dismissed as unconstitutional, pursuant to the Second Amendment, the Due Process Clause of the Fifth Amendment, and the Commerce Clause.

## BACKGROUND

Defendant is charged in a one-count Indictment with violating 18 U.S.C § 922(g)(1) for Possession of a Firearm and Ammunition by a Convicted Felon.[1] Prior to the Indictment, Defendant "had been convicted of a crime punishable by imprisonment for a term exceeding one year."[2] On March 30, 2025, Defendant's vehicle was stopped by law enforcement near the corner of Highway 171 and Fruge Street in Lake Charles, Louisiana.[3] Defendant moves to dismiss the Indictment on the basis that, as applied to his case, the

[1] Doc. 1.
[2] Doc. 1.
[3] Doc. 34-1, p. 1-2.

applicable statute (18 U.S.C. § 922(g)(1)) is unconstitutional under the Second Amendment, the Due Process clause, and the Commerce Clause.

## LAW AND ANALYSIS

*The Second Amendment*

Among the protections secured by the Bill of Rights is "the right of the people to keep and bear arms." United States Constitution Amendment II. Congress has made it "unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," to possess a firearm that has been transported in interstate commerce. 18 U.S.C. § 922(g)(1). Laws dispossessing felons are presumptively lawful. *See, e.g., United States v. Rahimi*, 144 S. Ct. 1889, 1902 (2024) (citing *District of Columbia v. Heller*, 554 U.S. 570, 626 & n.26 (2008)).

Defendant argues that 18 U.S.C § 922(g)(1) is unconstitutional under the Second Amendment as applied in his case. Defendant contends that felons are protected by the Second Amendment and that the government must prove a prior felony is analogous to historical firearm regulation.[4]

Defendant relies on *District of Columbia v. Heller*, 554 U.S. 570 (2008) (finding that the Second Amendment established "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635. In *New York Rifle and Pistol Association, Inc. v. Bruen*, 597 U.S.1 (2022), the Supreme Court revisited and refined

[4] Doc. 34-1, p. 2.

*Heller* and extended *Heller's* protection for carrying handguns in the home to carrying them publicly. *Id.* at 8-9.

In *Bruen,* the Supreme Court adopted a two-part analysis for evaluating the constitutionality of gun regulations that focuses on the Second Amendment's text, as informed by "historical tradition," with a special emphasis on how gun ownership rights were viewed at the time of the Nation's founding. 597 U.S. at 24. First, a defendant must show that the conduct being regulated falls under the Second Amendment. Once a defendant shows his conduct implicates the Second Amendment's plain text, the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. This involves addressing "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29.

The Supreme Court then considered its first post-*Bruen* challenge to a criminal firearm statute in *United States v. Rahimi*, 144 S. Ct. 1889 (2024), In *Rahimi*, the Court held that 18 U.S.C. § 922(g)(8) (prohibiting possession of a firearm by a person subject to certain restraining orders involving domestic violence) was constitutional. After conducting a historical analysis, the Court held that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.* at 1902. In doing so, the court reasoned that it was sufficient that the

prohibition "is 'relevantly similar'" to historical laws "in both why and how it burdens the Second Amendment right" *Id.* at 1901 (quoting *Bruen*, 597 U.S. at 29).

The Fifth Circuit issued a decision in *United States v. Diaz*, 116 F.4th 458 (5th Cir. Sept. 18, 2024) where it set forth the post-*Bruen* methodology to be employed by courts considering an as-applied challenge to the felon in possession of a firearm statute, 18 U.S.C. § 922(g)(1).

*Diaz* held that felons are among "the people" protected by the Second Amendment. *Id.* at 467. *Diaz* turned to the as-applied constitutional challenge to § 922(g)(1) and held that to survive an as-applied challenge to a prosecution under § 922(g)(1) "the government must demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to [the defendant]." *Diaz*, 116 F.4th at 467. In doing so, *Diaz* cautioned that the court may only consider "prior convictions that are 'punishable by imprisonment for a term exceeding one year.'" *Id.* (quoting § 922(g)(1)). Additionally, the court cannot consider other criminal conduct of the defendant (including conduct related to the instant offense) that did not result in a conviction that was punishable by imprisonment for a term exceeding one year or consider conduct that is a part of the instant offense. *Id.*

Specifically, the *Diaz* court examined the punishment for theft-related offenses and observed that such conduct was subject to harsh punishment, including the death penalty, during the Founding era. *Diaz*, 116 F.4th at 468. Addressing *Bruen's* "how and why"

question for burdening a citizen's Second Amendment right, the Court noted that Diaz had a previous felony theft conviction and that numerous colonial-era laws "severely punish[ed] people like Diaz who had been convicted of theft," often with death. *Id.* at 468-69. In deciding the "why" question, the Court stressed that these capital punishment laws had a purpose "relatively similar" to § 922(g)(1)'s, to "deter violence and lawlessness." *Id.* at 469. *Diaz*'s historical survey highlighted that founding era laws also answered the "how" question by permanent disarmament, which is not "beyond what was done at the founding" to punish thieves. *Id.* Therefore, the disarmament of thieves "fits within this tradition of serious and permanent punishment." *Id.* at 470. Based on this historical analogue, the Fifth Circuit Court recognized that "the law against theft of a vehicle ... serves as a predicate offense" for a § 922(g)(1) charge. *Id.*

Defendant argues that because the Indictment "does nothing more than suggest that Mr. January is a felon, the government has failed its burden to specifically identify any "prior convictions that are 'punishable by imprisonment for a term exceeding one year.'" Defendant contends that it is the Government's burden to prove by "historical analogues" that the Nation has a longstanding tradition of disarming someone. Defendant maintains that the Government has not met that burden and thus Count 1 of the Indictment must be dismissed.

The Government notes that in *Diaz,* severe punishments also applied in the Founding era to receiving stolen property and trafficking in contraband. Possession of

stolen goods has long been regarded as a serious offense. *Barnes v. United States*, 412 U.S. 837, 843 (1973) (referring to the "traditional common-law" inference applied to possession of stolen property as being "deeply rooted in our law"). *Id.* ("[t]o be found thus in the possession of stolen goods was a serious thing") (internal quotation marks and citation omitted). *Id.*

As such, the Government posits that January's conviction for possession of stolen property would have been met with harsh punishment during the Founding era. The imposition of capital punishment for receiving stolen property is a strong indication that dispossessing felons with a record such as January's would have been authorized. *Diaz*, 116 F.4th at 469 ("if capital punishment was permissible to respond to theft, then the lesser restriction of permanent disarmament that §922(g)(1) imposes is also permissible"). *See* LAWS OF VIRGINIA, *supra,* at 130 (receiving stolen horse subject to capital punishment).

The Government argues that there are enough similarities between January's crime and the thefts analyzed by the *Diaz* court to demonstrate January's permanent disarmament is consistent with "what was done at the founding." *Diaz,* 116 F.4th at 469.

The Government remarks that the Fifth Circuit has clearly recognized that "the government may disarm those who continue to serve sentences for felony convictions." *United States v. Giglio*, 126 F.4th 1039, 1044 (5th Cir. 2025). The court made plain that "our nation's historical tradition of forfeiture laws ... supports disarming those on parole,

probation, or supervised release." *Giglio*, 126 F.4th at 1044 (internal quotation marks and citation omitted; alteration by the Court). The Government contends that this principle applies to defendants still "serving a sentence for a prior conviction" at the time of their possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). I*d.* at 1045.

In the instant matter, Defendant was still serving a sentence of supervised release for a previous federal conviction when he was arrested for possessing a firearm as a prohibited person. As part of his plea for that conviction, Defendant acknowledged that he was a prohibited person that could not legally possess a firearm.

The Court finds that 18 U.S.C. § 922(g)(1) is constitutional under the Second Amendment as applied in this case.

*Due Process Clause*

Defendant seeks to dismiss the Indictment for lack of fair notice pursuant to the Due Process Clause of the Fifth Amendment.

Defendant argues that there was insufficient notice that he could not possess a firearm due to recent Fifth Circuit rulings. Defendant contends that 18 U.S.C § 922(g)(1) is unconstitutional pursuant to the Due Process clause on the basis that a penal statute "be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926) (A citizen "cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions." *Id.* at 393.)

"A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Branson*, 139 F.4th 475, 478 (5th Cir. 2025) (citing *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)).

Defendant claims that on March 30, 2025, when the offense allegedly occurred, the governing law in the Fifth Circuit was in "a state of flux, and no reasonable person in Mr. January's position could have known with certainty that his alleged possession was unlawful."[5] As such, Defendant claims that Section 922(g)(1) is unconstitutionally vague.

Defendant suggests that the ruling in *Diaz* created a significant uncertainty as to whether his own prior felony conviction prohibited him from possessing a firearm. Defendant remarks that other circuits have adopted conflicting approaches. See *United States v. Duarte*, 137 F.4th 747, 779-80 (9th Cir. 2025) (upheld § 922(g)(1)). As such, Defendant maintains that it was unclear whether the Government could disarm a person with his particular felonious history, further noting that *Diaz* left the question open.

The Government argues that the statute itself clearly defines what is prohibit—possessing a firearm as a felon—and subsequent judicial interpretation does not render the statute vague. *Branson*, 139 F.4th at 479 ("We are aware of no precedent that permits a vagueness challenge to circumvent the text because a court's interpretation has rendered

[5] Doc. 34-1, p. 6.

vague an otherwise pellucid statutory provision.") (citing *Columbia Nat. Ress., Inc. v. Tatum*, 58 F.3d 1101, 1106 (6th Cir. 1995) ("No precedent supports the proposition that a party may attack a Supreme Court decision as void for vagueness.")).

The Court finds that Defendant's vagueness argument lacks merit; Defendant has failed to show that the text of the statute is vague and thus Defendant had fair notice pursuant to the Due Process Clause of the Fifth Amendment.

*Commerce Clause*

Defendant argues that the statute 18 U.S.C § 922(g)(1) as applied to this case is unconstitutional pursuant to the Commerce Clause. The Commerce Clause permits regulation of economic activities that substantially affect interstate commerce. "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes" U.S. Const. Art. I, § 8, Cl 3.

Defendant contends that Fifth Circuit precedent relies on an erroneous reading of *Scarborough v. United States*, 431 U.S. 563 (1977), and that the Government has failed to establish that the defendant's conduct substantially affects interstate commerce under the standard set forth in *United v. Lopez*. Doc. 34-1 at 10. In *Lopez*, the Supreme Court concluded that the proper test for the scope of Congress's power to regulate activities that

"affect" interstate commerce requires an analysis of whether the regulated activity "'substantially affects' interstate commerce." 514 U.S. at 552-58.

Defendant asserts that the Fifth Circuit ignores *Lopez* and impermissibly expands the federal government's ability to regulate noneconomic conduct far beyond the Commerce Clause. See *United States v. Rawls*, 85 F.3d 240 (5th Cir. 1996). To that end, for a federal firearm regulation to pass constitutional muster, the Fifth Circuit requires a "minimal nexus" between mere firearm possession and interstate commerce. *Rawls* suggests that this is a low bar that the Fifth Circuit deems automatically cleared if the firearm possessed was simply manufactured in another state and therefore crossed state lines at some time in the past. *Id.* at 243.

Defendant argues that the Fifth Circuit caselaw is in irreconcilable conflict with the Supreme Court's Commerce Clause precedent and thus fails to enforce meaningful limits on the Commerce Clause's reach. Defendant informs the Court that the Fifth Circuit has granted a Petition for Rehearing En Banc on this exact issue in its July 20, 2026, order in *United States v Curtis Squire*. 117 F.4th 614.

Defendant argues that his possession of a firearm by a felon within the bounds of the state of Louisiana has no ascertainable federal nexus, discounting the fact that parts of the firearm may have been manufactured outside of the state. As such, Defendant maintains that the Indictment fails to carry the burden of proof regarding the sufficiency of a predicate felony.

The Government argues that since *Scarborough*, similar arguments raised on this issue have been rejected by the Fifth Circuit who has repeatedly held that it is subject to Supreme Court authority on the Commerce Clause. *See Dickey*, 102 F.3d at 163 ("[W]e are bound by the Supreme Court's decision in *Scarborough* ... that the felon in possession of a firearm statute is constitutional under the Commerce Clause.") (citing *Rawls*, 85 F.3d at 242- 43 (5th Cir. 1996); *See also United States v. Kirk*, 105 F.3d 997, 1016 n.25 (5th Cir. 1997) ("We are not at liberty to question the Supreme Court's approval of the predecessor statute to 18 U.S.C. § 922(g)(1), which criminalizes possession of a firearm by a felon 'in or affecting commerce.'") (citing *Scarborough*, 431 U.S. at 575). *See also United States v. Kuban*, 94 F.3d 971, 973 n.4 (5th Cir. 1996) (recognizing *Scarborough* as binding authority for Commerce Clause issue); *United States v. Vargas*, 74 F.4th 673, 680 (5th Cir. 2023) (en banc) (the "only court that can overturn a Supreme Court precedent is the Supreme Court itself") (internal quotation marks and citation omitted).

The Government remarks that *Lopez* acknowledged that § 922(q), unlike 18 U.S.C. § 922(g)(1), has "no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Lopez*, 514 U.S. at 562. The Supreme Court has since explained that "[s]uch a jurisdictional element may establish that the enactment is in pursuance of Congress' regulation of interstate commerce." *United States v. Morrison*, 529 U.S. 598, 612 (2000). The Fifth Circuit has addressed the concerns raised by Defendant and has

expressly held that neither the decision in *Lopez* nor its rationale renders 18 U.S.C. § 922(g)(1) unconstitutional, declaring "we join all other circuits that have considered the issue post-*Lopez* and hold that neither the holding in *Lopez* nor the reasons given therefor constitutionally invalidate § 922(g)(1)." *Rawls*, 85 F.3d at 242.

The Court finds that 18 U.S.C. § 922(g)(1) is constitutional under the Commerce Clause.

## CONCLUSION

For the reasons explained herein,

**IT IS ORDERED, ADJUDGED AND DECREED** that the Motion to Dismiss Indictment (Doc. 34) filed by Defendant, Toni January is **DENIED.**

**THUS DONE AND SIGNED** in chambers on this 24th day of August, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**